

FILED

15 AUG 31  AM 10: 56

CLERK, U.S. ... ... ... ...
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA FORT MYERS DIVISION

**LARRY HARRINGTON and LORI HARRINGTON,**

          Plaintiffs

vs.

**REGIONS BANK**

          Defendant

_____/

2:15 -C V- 522 -FtM-29 mrm

Case No. _____

JURY DEMANDED

### PLAINTIFFS LARRY HARRINGTON AND LORI HARRINGTON'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

1.  Plaintiffs Larry Harrington and Lori Harrington (collectively "**Plaintiffs**") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.  "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Id.* at 744. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them. Thus, and as applicable here, Section 227(b)(1)(A)(iii) of the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the

called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"

       3.      The TCPA prohibits calls to a cell phone made with an auto dialer or with a prerecorded voice unless prior express consent is given. Plaintiffs never so consented.

       4.      Regions Bank ("**Regions**" or "**Defendant**") called Plaintiffs' cell phones using an auto dialer and/or a pre-recorded voice. Because Plaintiffs had not given their consent to receive calls on their cell phones from Regions, these calls violated the TCPA.

       5.      This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiffs now seek this Court's intervention and help in attempting to prohibit this unlawful conduct.

       6.      Plaintiffs believe that Regions' practices of violating the TCPA are widespread. Plaintiffs intend to propound discovery to Regions identifying other individuals who have suffered similar violations.

### Parties

       7.      Plaintiff Larry Harrington is a resident of the State of Florida and this District.

       8.      Plaintiff Lori Harrington is a resident of the State of Florida and this District.

       9.      Larry Harrington is the "called party" with respect to the calls placed to his cellular telephone number(s): 239-470-5307, 239-470-3995, 239-770-1523 and 239-770-2717.

       10.     Lori Harrington is the "called party" with respect to the calls placed to cellular telephone number 239-770-1523.

       11.     Defendant Regions is a bank that regularly conducts business in Florida and maintains its primary business location at 1900 Fifth Avenue North, Birmingham, Alabama

35203. Regions can be served through its registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

### Jurisdiction & Venue

12.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

13.     Venue is proper pursuant to 28 U.S.C. § 139 (b) because the Plaintiffs are residents of this District.

### The Telephone Consumer Protection Act

14.     Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of auto-dialers to clog telephone lines with unwanted calls, "robocalls" with unsolicited or unwanted, prerecorded messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

. . . .

> Banning such automated or prerecorded telephone calls to the home, except
> when the receiving party consents to receiving the call[,] . . . is the only
> effective means of protecting telephone consumers from this nuisance and
> privacy invasion.

*Id.* § 2(10) and (12); *See also Mims*, 132 S. Ct. at 745.

17.     The TCPA regulates, among other things, the use of automated telephone equipment, or "auto-dialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

18.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

20.     The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *See FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65.

21.     On July 10, 2015 the FCC confirmed it previous rulings that an autodialer included equipment that generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. The FCC also reiterated that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason. FCC 15-72.

### Factual Allegations

22.     Larry Harrington, through his drywall company, Aced Interior Drywall, Inc., secured a loan from AmSouth Bank (the "**Loan**"). Larry Harrington did not give AmSouth Bank his or any cellular number(s) when he obtained the Loan.  At no time thereafter did Plaintiffs give AmSouth Bank their cellular number(s) or permission to call their cellular number(s).

23.     Upon information and belief, Regions and AmSouth Bank merged and Regions allegedly acquired the Loan.

24.     Upon information and belief Regions began collection efforts on the Loan and began a process of making telephone phone calls to Plaintiffs' cell phones.  The calls continued until approximately July 2015. The purpose for these calls was debt collection.

25. Calls were made by Regions to Plaintiffs at the following cellular numbers (collectively the "**Cell Phone Numbers**"):

    a. 239-470-5307

    b. 239-770-1523

26. Larry Harrington is the regular user of cell phone number 239-470-5307. Lori Harrington is the regular user of cell phone number 239-770-1523.

27. On August 18, 2014 Larry Harrington wrote Regions a letter and instructed Regions, "Do not call any of my phones, only written communications only at the above address." Despite the letter, the calls continued.

28. Larry Harrington is the subscriber on the account for the Cell Phones Numbers and is charged for calls made to the Cell Phones Numbers via a monthly charge. At all material times Larry Harrington was/is the subscriber to the cell phone service associated with each of the Cell Phone Numbers and the cellular service provider for the Cell Phone Numbers was either Verizon or Metro PCS. The cellular service provider initially was Verizon and then changed to Metro PCS.

29. Regions placed automated calls to Plaintiffs' cell phones using an automatic telephone dialing system ("**ATDS**") "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1)."

30. When the calls connected, there was an audible click from the receiver. After a significant pause, a message was left by Regions either by a live person or a prerecorded voice. As such, the calls at issue were made using an automatic telephone dialing system, equipment having the capacity to dial Plaintiffs' numbers without human intervention.

31.     The facts in the preceding paragraph indicate calls were placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

32.     On many of the calls Regions left a message consisting of a prerecorded voice. Plaintiffs listened to the message and recognized that it was not a live person leaving the message but an automated voice recording.

33.     The facts in the preceding paragraph indicate calls were placed using an "artificial or prerecorded voice."

34.     Plaintiffs have not provided Regions with the Cell Phone Numbers, their cellular telephone number(s) or permission to call their cellular number(s) or the Cell Phone Numbers.

35.     None of the calls at issue were placed by Regions to Plaintiffs' Cell Phone Numbers for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

36.     Beginning with the date four years before the filing of this Complaint, Regions placed phone calls to Plaintiffs' cellular telephone number(s) using an auto dialer or with a prerecorded voice in an effort to collect the alleged debt on the Loan, and the calls continued through at least July of 2015.

### Legal Claims

### Count One Against Regions:

### Violation of the TCPA's provisions prohibiting
### auto-dialed and prerecorded message calls to cell phones

37.     Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

38.     Regions repeatedly placed non-emergency telephone calls to Plaintiffs'

cellular telephone number(s) using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of the federal law, including 47 U.S.C. §227(b)(1)(A)(iii). Thus, Regions violated the TCPA by initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiffs' telephone numbers assigned to a cellular telephone service.

39.     Plaintiff is informed, believes and alleges that Regions' violations of the TCPA described above were done willfully and knowingly.

40.     The willful and knowing nature of Regions' conduct is exhibited in part by the following facts:

a.   On August 18, 2014 Larry Harrington wrote Regions a letter and told Regions not to call any of his phones and requested only written communications from Regions yet the calls continued;

b.   Regions is a large corporation with access to legal advice through its own regulatory department and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

c.   Regions knew or had reason to know that its conduct was inconsistent with published FCC guidance interpreting the TCPA and the plain language of the statute;

d.   Regions knew that Plaintiffs had not consented to calls to their cell phones as Regions did not receive Plaintiffs' cell phone numbers from Plaintiffs;

e.   Upon information and belief Regions knew that permission was required before Regions could call Plaintiffs' cell phone using an auto-dialer or a prerecorded voice;

f.   Regions has been sued before for violations of the TCPA; and

g.   Upon information and belief Regions was aware of the requirements of the TCPA, but choose to not to comply with those requirements.

41.   Plaintiff is entitled to damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3) because the violations were willful and knowing violations of the TCPA.

## Demand for Preservation

42. Plaintiffs demand that Defendant retain and preserve all records related to the allegations in this Complaint. Specifically, Plaintiffs' demand for preservation includes, but is not limited to, the following documents and information:

a.   All applications for all accounts which were the subject of any collection calls made by or on behalf of Defendant to Plaintiffs from August 28, 2011 to the present;

b.   All documents evidencing the terms and conditions of all accounts which were the subject of any collection calls made by or on behalf of Defendant to Plaintiffs from August 28, 2011 to the present;

c.   All documents (including recordings and electronic documents) evidencing any and all communications between Defendant and/or any persons acting on its behalf and Plaintiffs from August 28, 2011 to the present;

d.   List of all phone numbers, including spoofed numbers, used by Defendant and/or persons acting on its behalf in making calls to Plaintiffs from August 28, 2011 to the present;

e.   All recordings, transcripts and/or summaries of all calls made by or on behalf of Defendant to Plaintiffs from August 28, 2011 to the present;

f.   All written, recorded, electronic or other documentation or evidence which Defendant contends shows that it obtained the prior express consent of Plaintiffs to call Plaintiffs using an auto-dialer and/or using an artificial or prerecorded voice;

g.   All written, recorded, electronic or other documentation or evidence of any and all requests by Larry Harrington that calls made by or on behalf of Defendant to Larry Harrington stop;

h.   All documents including but not limited to invoices, transmission logs, or summary logs, provided to Defendant by any person or entity retained by Defendant to

make calls to cell phones using an auto-dialer and/or an artificial or prerecorded voice from August 28, 2011 to the present, to the extent such documents pertain to calls made to Plaintiffs;

      i.   All written, recorded, electronic or other documentation or evidence which provide all or any part of the following information:

      (i)      the dates, times and duration of all calls made by or on behalf of Defendant to Plaintiffs using an auto-dialer and/or an artificial or prerecorded voice;

      (ii)      the number from which each call was made;

      (iii)      the number to which each call was made;

      (iv)      the identity of the intended recipient and actual recipient of each call; and/or

      (v)      the identity of the subscriber of each number called.

      j.   All documents evidencing the name, make, model, serial number, version, and capabilities of all equipment, hardware, and/or software used to make any calls by or on behalf of Defendant to Plaintiffs and all documents evidencing which calls were made using which equipment, hardware and/or software;

      k.   All written, recorded, electronic or other documentation or evidence of all policies or procedures implemented by Defendant with regard to the making of calls to cell phone numbers using an automatic telephone dialing system and/or an artificial or prerecorded voice;

      l.   All written, recorded, electronic or other documentation or evidence concerning Defendant's knowledge of the TCPA and the regulations and rulings of the FCC thereunder; and

      m.  All written, recorded, electronic or other documentation or evidence concerning any lawsuits and/or settlements and/or settlement discussions to which Defendant was a party and/or any demands upon Defendant which, in whole or in part, pertain to the TCPA within the last five years.

      43.      Demand is made on Defendant to notify any third parties or vendors

retained by Defendant to make auto-dialer or artificial or prerecorded voice calls to Plaintiffs

and request production of any documents included within this demand.

## Relief Sought

      44.      Plaintiffs request the following relief:

        a.   That Regions be found liable under the TCPA and Plaintiffs be awarded actual damages, including emotional distress suffered as a result of the intentional, reckless and/or negligent TCPA violations in an amount to be determined at trial for Plaintiffs or statutory damages of $500 per call for each negligent violation of the TCPA, and $1,500 per call for each willful/knowing violation of the TCPA; and

        b.   Plaintiffs be granted other relief as is just and equitable under the circumstances.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

By:    _/s/ Brandon J. Hill_
      Brandon J. Hill
      Florida Bar Number: 37061

**Wenzel Fenton Cabassa, PA.**

1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct No.: 813-337-7992
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com

By:    _/s/ Chris R. Miltenberger_
      Chris R. Miltenberger
      Texas Bar Number: 14171200

**The Law Office of Chris R.
Miltenberger, PLLC**

1340 N. White Chapel, Suite 100
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

_Trial Counsel_
_Subject to Special Admission to Practice and_
_Motion Pro Hac Vice_

**Attorneys for Plaintiff**